KNICKERBOCKER TRUST CO. v. ONEONTA, C. & R. S. RY. CO. et al.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

Appeal from Special Term, Otsego County.

Action by the Knickerbocker Trust Company, as trustee, against the Oneonta, Cooperstown & Richfield Springs Railway Company and another. From the judgment, the party aggrieved appeals. Affirmed.

Thomas Carmody, Atty. Gen. (Wilber ·W. Chambers, Deputy Atty. Gen., of counsel), for comptroller.

Louis F. Reed, of New York City (Ralph W. Gwinn, of New York City, of counsel), for appellants.

PER CURIAM. Order affirmed, with $10 costs and disbursements.

HOUGHTON, J. (dissenting). I do not think the avails arising from the sale of the Oneonta, Cooperstown & Richfield Springs Rail-

way· Company (which for convenience may be termed the Coopers-town Company) can be taken for the purpose of paying the franchise tax incurred by the Oneonta & Mohawk Valley Railway Company (which may be termed the Mohawk Valley Company) while it operated the·railway. Through foreclosure the franchise and property of the Cooperstown Company was sold to one Bean, and he organized the Mohawk Valley Company for the purpose of taking over his bid and operating the railroad. Those in charge of the foreclosure proceedings permitted him to make partial payment, and gave him time in which to pay the, balance, and meanwhile and during the period for. which the tax is claimed the railroad, which was an electric one, was operated by the Mohawk Valley Company. Eventually it turned out that neither Bean nor the Mohawk Valley Company was able to fulfill the conditions of the purchase, and a resale was ordered of the property and franchise of the Cooperstown Company. During the year for which the tax in controversy was levied the Mohawk Valley Company made gross earnings of $190,042.74, and in pursuance of the right given under section 185 of the Tax Law the comptroller imposed a tax of 1 per cent. upon such gross earnings against such operating company, amounting to $1,900.43, which, with the penalty added, is the tax sought to·be collected from the property or proceeds of sale of the property of the Cooperstown Company, which was not operating the road at the time, nor exercising any of its functions as an electric railway corporation.

: The franchise tax on elevated and surface railroads not operated by steam, provided for by section 185 of the Tax Law (Consol. Laws 1909, c. 60), is not a tax imposed for the privilege of being a corporation or upon capital employed, but is a tax imposed upon a corporation for the privilege of exercising its franchise in conducting and operating a railroad of such description. For aught that appears, the Mohawk ¦Valley Company, against which the tax was imposed, has ·property from which the tax can be collected. The record shows that it was stipulated on the hearing that the Cooperstown Company was abandoned and did no business during the year for which the tax in controversy was imposed, and that during that time the road was in fact operated by the Mohawk Valley Company, which was a corporation having a legal right so to do. This latter company paid the franchise tax for a certain period during which it operated the road, but failed to pay for a later period, and because of such failure it is sought to charge the property of the Cooperstown Company therefor.

It is true that the title to the roadbed upon which the Mohawk Valley Company operated belonged to the Cooperstown Company, and it is also true that in the decree directing a sale the referee was directed to pay all taxes. Of course, this provision of the decree means all taxes legally imposed, and does not include taxes of another corporation not properly chargeable to it. It is also true that section 197 of the Tax Law makes all the taxes legally assessed a charge on the real and personal property of the corporation liable to pay the same. This provision does not aid the respondent, if the Cooperstown Road is not the corporation which is liable for the payment of the tax.

If there be any questions as to the propriety of imposing a tax upon the operating company, rather than the dormant one, the latter part ·of section 185 would seem to be quite conclusive; for it is there provided that, if such railroad corporation has leased its property to .another railroad, it shall not pay the 1 per centum imposed upon the ·operating company, but only a tax of 3 per cent. upon dividends paid in excess of 4 per cent. upon the amount of its capital stock. The tax in fact was levied by the comptroller upon the operating company, .and not upon the dormant company, which owned the roadbed, and I think the company against which the assessment was made should pay, and not the dormant company, which did not exercise the fran- ·chise of operation.

---

### COHEN v. LONG ISLAND R. CO. et al.

·(Supreme Court, Appellate Division, First Department. January 24, 1913.)

.1. EVIDENCE (§ 579*)—EVIDENCE AT FORMER TRIAL—DECEASED WITNESS.

Under Code Civ. Proc. § 830, providing that, where a witness dies after trial of an action, his testimony at such trial may be read in evidence at a new trial of the same subject-matter in the same or another action between the same parties, testimony of one, who saw an accident at a railroad crossing, in which a brother and sister, both unmarried, were killed, given in an action by an administrator for the death of one of them, was admissible in an action by the same administrator in an action for damages for the death of the other; the witness having died.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2412; Dec. Dig. § 579.*]

:2. EXECUTORS AND ADMINISTRATORS (§ 51*)—CAUSE OF ACTION—ASSETS— DEATH.

A cause of action for death is no part of the assets of the decedent's estate, nor are the damages.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 51;* Death, Cent. Dig. §§ 132–138.]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.